# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 09-872 C
(Filed Under Seal: March 5, 2010)
(Reissued for Publication: March 23, 2010)[*]

| | |
|---|---|
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | Bid Protest; Motion for Discovery; Motion |
| DATAMILL, INC.,                              \* | to Supplement the Administrative Record; |
|                                              \* | Deposition Testimony; <u>Axiom Resource</u> |
|                     Plaintiff,               \* | <u>Management, Inc.</u>; <u>Global Computer</u> |
|                                              \* | <u>Enterprises, Inc.</u>; Motion to Strike; |
| v.                                           \* | Proffered Declaration; Personal |
|                                              \* | Knowledge; Fed. R. Evid. 602; Opinion |
| THE UNITED STATES,                           \* | Testimony; Fed. R. Evid. 701; Hearsay; |
|                                              \* | Fed. R. Evid. 803; Relevance; Fed. R. Evid. |
|                     Defendant.               \* | 401, 402; Testimony Related to the Merits; |
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | Allegations of Fraud or Bias |

<u>Howell Roger Riggs</u>, Huntsville, AL, for plaintiff.

<u>Cameron Cohick</u>, United States Department of Justice, Washington, DC, for defendant.

### RULING ON PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND DEFENDANT'S MOTION TO STRIKE THE DECLARATION OF TRE' BOOK

**SWEENEY**, Judge

     Before the court in this post-award bid protest are plaintiff's motion for expedited discovery and defendant's motion to strike the declaration of Tre' Book ("Book Declaration"). In this action, plaintiff DataMill, Inc. ("DataMill"), an incumbent contractor providing logistics and supply database management support to the Counter Rocket, Artillery Mortar ("C-RAM") Program Office within the United States Army ("Army") Aviation Missile Command, asserts that the Army made an unlawful decision to acquire a system from one of DataMill's competitors without competition. Defendant, contending that the court lacks subject matter jurisdiction over protests of delivery orders, moved to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). The issue before the court at this juncture is whether supplementation of the agency-assembled administrative record with deposition testimony, a proffered declaration, and other documentary evidence is warranted. For the reasons discussed below, DataMill's motion for expedited discovery is denied and defendant's motion to strike the Book Declaration is granted.

---

    [*] This reissued decision incorporates the redactions proposed by the parties on March 19, 2010. Redactions are indicated with a bracketed ellipsis ("[. . .]").

## I. BACKGROUND[1]

DataMill licensed to the Army a software program called RepairData, which provided logistics and supply database management support to the C-RAM Program Office.  Compl. ¶ 5. The licensing agreement between DataMill and the Army expired on August 31, 2009.  AR 126. DataMill alleges that the C-RAM Program Office, "[w]ithout notice to DataMill and without any opportunity for DataMill to compete, . . . made a determination to acquire a similar system to that of DataMill, from Avantix, Inc.[,] without competition."  Compl. ¶ 4.  On August 17, 2009, the C-RAM Program Office issued a military interdepartmental purchase request ("MIPR") to the United States Navy ("Navy") Space and Naval Warfare Systems Center ("SPAWAR") for the Catalog Ordering Logistics Tracking System ("COLTS"), a software program.  Id. ¶ 9; AR 19-107, 186, 354.  Avantix LLC ("Avantix"), which owns the COLTS program, "is the developer of COLTS . . . and has exclusively trained and authorized Northrop Grumman . . . [in] Huntsville, AL to provide all COLTS analysis (with the exception of IT solutions) and installation services including all [Automatic Identification Technology] interface solutions."  AR 2; see also Compl. ¶ 13 (stating that Northrop Grumman is the prime support contractor for the C-RAM Program Office and promotes the COLTS program under a teaming arrangement with Avantix).  Plaintiff alleges that the MIPR, which was signed by a program analyst in the C-RAM Program Office, was also endorsed by Edward Lawler, a program manager at Northrop Grumman.  Compl. ¶ 10.

In May 2009, several months prior to the Army's issuance of the MIPR, DataMill instituted a lawsuit in the United States District Court for the Northern District of Alabama ("Northern District of Alabama") in which it alleged that Northrop Grumman and Avantix misappropriated DataMill's proprietary data in violation of the Alabama Trade Secrets Act.  Id. ¶ 13.  In the Northern District of Alabama litigation, DataMill claimed that Northrop Grumman

> had access to DataMill's RepairData Program by virtue of its role as [the Army's Aviation Missile Command] prime support contractor and that Northrop Grumman TASC provided Avantix, the software developer, with trade secret information enabling Avantix to shortcut development time.  Avantix developed a system with the "look and feel" of RepairData.

Id. ¶ 14.  The trade secret lawsuit is currently pending before the Northern District of Alabama. Id.

On September 14, 2009, DataMill filed a protest of the Army's decision to acquire the COLTS program from the Navy without competition with the United States Government Accountability Office ("GAO").  AR 279-82.  During the proceedings before the GAO, DataMill explained that the C-RAM Program Office was located "as part of the Program Executive Office

---

[1]  The facts recited herein are derived from the complaint ("Compl.") and the agency-assembled administrative record ("AR").  A full factual recitation is contained in a concurrently issued decision adjudicating defendant's motion to dismiss.

for Aviation at Redstone Arsenal, Alabama," thereby rendering the C-RAM Program Office, in the opinion of DataMill, "a co-located tenant at the facility." Id. at 380. This close proximity was important, DataMill asserted, because C-RAM Program Office "officials have actual knowledge that [the Army Aviation and Missile Life Cycle Management Command] has several Task Order/Delivery Order contracts that could have accommodated the requirement in this case." Id. The C-RAM Program Office, DataMill emphasized, instead opted to utilize the Navy, located in San Diego, California, rather than the local procurement office in Alabama out of a "fear that the local procurement offices would have knowledge of the RepairData competing system and require full []and open competition." Id. Contending that the Army violated the Competition in Contracting Act of 1984 ("CICA"), DataMill protested the C-RAM Program Office's decisions (1) "to deceive the Department of the Navy procuring office by failing to provide to the Navy the complete factual circumstances of the existence of a competitor which implicates the integrity of the procurement system, as well as[] the integrity of the Navy," id. at 379, and (2) "to use the Department of Navy SPAWAR Systems Center Pacific Procuring Agency to obtain the software system from Avantix for fear that the local procurement office would require a full and open competition," id. at 379-80. The GAO, determining that it lacked jurisdiction, ultimately dismissed DataMill's protest. Id. at 392-94. The instant protest before the United States Court of Federal Claims ("Court of Federal Claims") followed.

## II. DATAMILL'S MOTION FOR EXPEDITED DISCOVERY[2]

### A. DataMill's Arguments

DataMill asserts that the agency-assembled administrative record "lacks particularly relevant information concerning the history of the relationship between DataMill and Northrop Grumman TASC, especially information concerning the activities of one[] Ed Lawler, an employee of Northrop Grumman." Pl.'s Mot. Expedited Disc. ("Pl.'s Mot.") 2. According to DataMill, Mr. Lawler's name appears in numerous documents that constitute the current agency-assembled administrative record, thereby suggesting to DataMill that Mr. Lawler is "a key and pivotal person in the decision process to select the Navy contract as a contract vehicle and to select Avantix without competition." Id. Additionally, DataMill contends that two C-RAM Program Office employees, Fred Frost and Rollie Porter, played critical roles in the Army's decision to contract with the Navy. Id. at 3. According to DataMill, the issue in this case is the "procurement decision, and not the means of procurement," Pl.'s Reply Def.'s Resp. Opp'n Pl.'s Mot. ("Pl.'s Reply") 1, and its discovery requests are related to the procurement decision itself.

---

[2] The court notes that DataMill previously filed a motion for expedited discovery, together with a motion to compel defendant to file the administrative record, with its complaint. Following a preliminary scheduling conference on December 22, 2009, the court entered an order setting a deadline for the filing of the administrative record and establishing a briefing schedule. In a separate order dated December 22, 2009, the court denied without prejudice DataMill's motion for expedited discovery and denied as unnecessary DataMill's motion to compel defendant to file the administrative record.

DataMill explains that its counsel is privy to documents and information produced in the Northern District of Alabama litigation and that, despite requests made to Northrop Grumman's counsel for the release of electronic mail communications from Mr. Lawler "concerning COLTS, DataMill, Avantix, and RepairData," it has been unable to obtain these materials. Pl.'s Mot. 2. DataMill also indicates that its counsel sought consent from government counsel in this case to depose Messrs. Lawler, Frost, and Porter; however, government counsel objected. Id. at 3. According to DataMill, the information it requests through discovery

> is needed to establish the depth of a Northrop Grumman organizational conflict of interest and to further substantiate that the information used by Lawler, Frost and Porter to convince the Navy to issue the Task Order without competition was patently false and they knew it to be false at the time administrative decisions were made.

Id.

DataMill "asks . . . for the opportunity to [elicit] evidence that counsel believes will help explain to the Court the history and background to this decision which purports to be factually based and in the best interest of the government, when, it, in fact, is not." Id. at 4. It contends that the administrative record "is presently devoid of information concerning the Army's decision making process, the information it considered, and the basis for its final decision to make a sole source procurement." Pl.'s Reply 3; accord id. at 4. DataMill relies almost exclusively upon Global Computer Enterprises, Inc. v. United States, 88 Fed. Cl. 52 (2009), see Pl.'s Mot. 3-4, but avers that "supplementation of the administrative record would be justified even under the authority cited by the Government in favor of the position that supplementary evidence is only available when absolutely necessary to the Court's decision," Pl.'s Reply 3 (citing Fla. Power & Light Co. v. Lorion, 470 U.S. 729 (1985); Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374 (Fed. Cir. 2009); Murakami v. United States, 46 Fed. Cl. 731, aff'd, 398 F.3d 1342 (Fed. Cir. 2005)). According to DataMill, the "correct standard for supplementing the administrative record recognized by this Court is 'that where there are additional materials that will assist the court in conducting a "thorough, probing, in-depth" review of the agency action, supplementation of the administrative record with those materials should be permitted.'" Id. (quoting Savantage Fin. Servs., Inc. v. United States, 81 Fed. Cl. 300, 311 (2008)).

In its motion for expedited discovery, DataMill requests the following:

> an Order permitting the supplementation of the Administrative Record for emails dated in the year 2006 between[,] to, from, or copied to Ed Lawler in which COLTS, DataMill, RepairData, or Avantix appear in the text or the title of such emails. Further, the Plaintiff moves the Court [for an] Order permitting the issuance of subpoenas . . . for a deposition [of Edward Lawler] and production of [the] documents [listed above] with five days notice to the defendants and Northrop Grumman TASC. Plaintiff likewise requests the Court to Order Mr.

Rollie Porter and Mr. Fred Frost, who are both located in Huntsville, Alabama[,] to appear subject to a five day notice of deposition.

Pl.'s Mot. 4-5.  According to DataMill, its request for discovery is "narrowly-tailored" and

include[s] only documents which it considers to be very likely to contain relevant information, and depositions of only those individuals it believes to have been intimately involved with the procurement decision at issue.  The depositions of Lawler, Frost, and Porter will supply factual information as to the information presented to the Army for consideration, as well as[] the basis for the Army's decision to make a sole source procurement.

Pl.'s Reply 4.

## B.  Defendant's Arguments

Defendant asserts that "[d]iscovery is rarely appropriate in a bid protest, and DataMill offers no valid justification for it in this case."  Def.'s Opp'n Pl.'s Mot. ("Def.'s Opp'n") 1.  Moreover, it argues that DataMill never alleged a conflict of interest in its complaint.  Id. at 4 n.1.  DataMill's requested discovery, according to defendant, is also not relevant because this case presents a purely legal issue, viz., whether the Army's acquisition of the COLTS program violated the CICA because it was made without competition or did not violate the CICA "because it is covered by that statute's exception to its competition requirements."  Id. at 5.  But see Pl.'s Reply 1 (contending that defendant "incorrectly frames the issue to be decided by DataMill's bid protest"), 2 (arguing that defendant's characterization of DataMill's protest as "a purely legal challenge . . . is an attempt to create a 'straw man'"), 3 ("[T]he Government's underlying premise concerning the issue presented is incorrect, and therefore its conclusion concerning the sufficiency of [the] administrative record is similarly flawed.").  Defendant maintains that the "record as filed contains all facts necessary for the Court to decide that issue."  Def.'s Opp'n 1.

According to defendant, the "substantive ability of RepairData to compete with COLTS, and any of the participants' knowledge or beliefs about that ability, are irrelevant to the issue of whether the Army used statutorily authorized procurement procedures that gave it the right under CICA to acquire COLTS without competition."  Id. at 5.  The information that DataMill seeks, defendant emphasizes, wholly "relates to the knowledge or beliefs of the contractor, and of several participants in the Army's acquisition process, regarding the actual or potential capabilities of DataMill's RepairData software."  Id. at 1-2; see also id. at 5 (explaining that DataMill "seeks to add to the record information about what the Army and the contractor knew, or believed, about DataMill's RepairData software and how it might compare to the COLTS software the Army chose to acquire").  The knowledge or beliefs of these individuals, defendant asserts, has no bearing upon whether the Army's acquisition of the COLTS program violated the CICA.  Id. at 2.

Defendant also argues that DataMill's requested discovery is unduly burdensome because it requires the collection of documents and preparation of witnesses on an expedited basis, and requires travel for deposition preparation and attendance.  Id. at 5.  DataMill acknowledges that its request "would create some additional burden upon the Government and potential witnesses." Pl.'s Reply 5.  However, it claims that "this burden is not unreasonable given the relevance and necessity of the discovery at issue."  Id.

### C.  Standards for Determining Whether Supplementation Is Appropriate

The Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874-76 (1996), expanded the bid protest jurisdiction of the Court of Federal Claims.  Pursuant to the ADRA, the Court of Federal Claims reviews the legality of an agency's decision in accordance with the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (2006).  See Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000); Asia Pac. Airlines v. United States, 68 Fed. Cl. 8, 19 (2005); see also 28 U.S.C. § 1491(b)(4) ("In any action under [section 1491(b)], the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").  "The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court."  Fla. Power & Light Co., 470 U.S. at 743-44.  "As a general rule, in determining whether an agency's actions are arbitrary or irrational, the 'focal point for judicial review [of the agency's decision] should be the administrative record already in existence, not some new record made initially with the reviewing court.'"  Knowledge Connections, Inc. v. United States, 79 Fed. Cl. 750, 759 (2007) (quoting Fla. Power & Light Co., 470 U.S. at 743 (alteration in original)).  The principle that a reviewing court "is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions," Fla. Power & Light Co., 470 U.S. at 744, "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny," Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989), disapproved on other grounds by Axiom Res. Mgmt., Inc., 564 F.3d at 1379-81.

The administrative record "is not a documentary record maintained contemporaneously with the events or actions included in it.  Rather, it is a convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court."  Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 222 (2001).  "[I]t must be remembered that the 'administrative record is a fiction.'"  Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 508 (2003) (quoting CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 118 (2000)); see also PlanetSpace Inc. v. United States, 90 Fed. Cl. 1, 4 (2009) ("The conceptual elegance evinced by these fundamental principles of administrative law . . . masks the practical difficulty of identifying where the 'administrative record' ends and where 'extra-record' evidence begins.").  Therefore, the court eschews "apply[ing] an iron-clad rule automatically limiting its review to the administrative record."  GraphicData, LLC v. United States, 37 Fed. Cl. 771, 779 (1997); accord id. at 780 ("[A] judge confronted with a bid protest case should not view the administrative record as [an] immutable boundary that defines the scope of the case."); Al

Ghanim, 56 Fed. Cl. at 508 n.7 (recognizing that judges in the Court of Federal Claims will allow supplementation of the administrative record when appropriate); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 350 (1997) (stating within the bid protest context that "this court has adopted a flexible approach . . . in putting together the evidence that will be considered . . . , balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry"[3]). Nevertheless, supplementation of the administrative record is not automatic, and "the flexibility of the court's scope of review does not give the parties carte blanche to supplement the record . . . ." Al Ghanim, 56 Fed. Cl. at 508.

As the court stated in Montana Fish, Wildlife, & Parks Foundation, Inc. v. United States, "[m]otions to supplement the administrative record in bid-protest actions in this court are governed by the Federal Circuit's recent decision in Axiom [Resource Management], Inc. . . . ."

---

[3] Eight such exceptions were identified by the United States Court of Appeals for the District of Columbia Circuit in Esch, a case frequently discussed and cited by the Court of Federal Claims. They include:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

876 F.2d at 991 (citing Steven Stark & Sarah Wald, The Failed Attempts to Limit the Record in Review of Administrative Action, 36 Admin. L. Rev. 333, 345 (1984)). The United States Court of Appeals for the Federal Circuit ("Federal Circuit") disapproved the practice of justifying supplementation of the administrative record based upon the exceptions enumerated in Esch. See Axiom Res. Mgmt., Inc., 564 F.3d at 1380-81. Reliance upon Esch, the Federal Circuit explained, was "problematic" for two reasons. Id. at 1380. First, the exceptions articulated by the Esch court were derived from a law review article that predated the United States Supreme Court's decision in Florida Power & Light Co., which determined that a reviewing court must apply the appropriate APA standard to agency decisions based upon the record presented by the agency to the court. Id. Second, "Esch's vitality even within the D.C. Circuit is questionable in light of more recent opinions by that court which demonstrate a more restrictive approach to extra-record evidence." Id. (citing IMS, P.C. v. Alvarez, 129 F.3d 618 (D.C. Cir. 1997); Saratoga Dev. Corp. v. United States, 21 F.3d 445 (D.C. Cir. 1994)). "[I]nsofar as [it] departs from fundamental principles of administrative law as articulated by the Supreme Court," the Federal Circuit stated that Esch "is not the law of this circuit." Id. at 1381.

No. 09-568C, 2010 WL 125971, at *4 (Fed. Cl. Jan. 11, 2010).  In Axiom Resource
Management, Inc., the Federal Circuit emphasized that "the parties' ability to supplement the
administrative record is limited," 564 F.3d at 1379, and that the "focus of judicial review of
agency action remains the administrative record, which should be supplemented only if the
existing record is insufficient to permit meaningful review consistent with the APA," id. at 1381.
The Federal Circuit's decision in Axiom Resource Management, Inc. ultimately requires that
courts determine whether supplementation of the administrative record is "necessary in order not
'to frustrate effective judicial review.'"  Id. (quoting Camp v. Pitts, 411 U.S. 138, 142-43
(1973)).

        Supplementation, therefore, is justified when "required for meaningful judicial review,"
Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir.
2001); accord Murakami, 46 Fed. Cl. at 735 (noting that the Esch exceptions to the general rule
against extra-record evidence "are based upon necessity, rather than convenience, and should be
triggered only where the omission of extra-record evidence precludes effective judicial review"
(emphasis added)), or when "the record is insufficient for the Court to render a decision,"
Portfolio Disposition Mgmt. Group, LLC v. United States, 64 Fed. Cl. 1, 12 (2005); accord CCL
Serv. Corp., 48 Fed. Cl. at 119 (stating that supplementation is appropriate where the record "still
has lacunae that should be filled based on the protestor's challenges").  Supplementation is also
justified "when it is necessary for a full and complete understanding of the issues."  Blue & Gold
Fleet, LP v. United States, 70 Fed. Cl. 487, 494 (2006), aff'd, 492 F.3d 1308 (Fed. Cir. 2007);
accord Al Ghanim, 56 Fed. Cl. at 508 (recognizing that supplementation is appropriate "when
necessary to prove that evidence not in the record is evidence without which the court cannot
fully understand the issues"); Mike Hooks, Inc. v. United States, 39 Fed. Cl. 147, 158 (1997)
(considering evidence supplementing the record because it "help[s] explain the highly technical
nature of the issues").  Although courts have employed a "flexible approach" to determine the
corpus of evidence that will be considered in numerous bid protest cases, Cubic Applications,
Inc., 37 Fed. Cl. at 350, supplementation of the administrative record ultimately "'must be
extremely limited,' lest the admission of evidence not considered by the agency below and its
consideration by the court convert the 'arbitrary and capricious' standard into effectively de novo
review."  Murakami, 46 Fed. Cl. at 735.

## D.  DataMill Has Not Demonstrated That Supplementation of the Administrative Record Is Warranted

        DataMill's discovery request hinges upon its belief that Mr. Lawler, an employee of
Northrop Grumman, in conjunction with Messrs. Frost and Porter, two C-RAM Program Office
employees, improperly influenced the Army's decision to procure the COLTS program without
competition.  In essence, DataMill seeks documents and testimony that it believes will expose
bad faith and bias on the part of both Northrop Grumman and the Army.  See Pl.'s Reply 4
(maintaining that the Army's decision constituted "an arbitrary and capricious exercise of
discretion, and deceit"); see also AR 380 (arguing before the GAO that "[i]t is apparent that the
Army Program Office, acting in bad faith, elected to determine the best value for the government

in secret meetings, rather than through a competitive process and evaluation" (emphasis added)), 381 (arguing before the GAO that the C-RAM "Program Office engaged in a process of 'gaming' the system so as to avoid the requirements of CICA" (emphasis added)).  In Information Technology & Applications Corp. v. United States, the Federal Circuit addressed the standard for permitting discovery related to allegations of bias within the bid protest context, explaining that "[a]n agency decision is entitled to a presumption of regularity.  '[D]iscovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's [decision].'"  316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003) (quoting Impresa Construzioni Geom. Domenico Garufi, 238 F.3d at 1341) (alterations in original).  Noting that the Information Technology & Applications Corp. appellant "pointed to no record evidence of bias" and instead contended that the United States Air Force erred in evaluating proposals, the Federal Circuit explained that such a contention was "not evidence of bias, and it is insufficient to overcome the presumption that the contracting officer acted in good faith."  Id.

The Court of Federal Claims has recognized that "rare indeed would be the occasions when evidence of bad faith will be placed in the administrative record, and to insist on this–and thus restrict discovery regarding bad faith to cases involving officials who are both sinister and stupid–makes little sense."  Beta Analytics Int'l, Inc. v. United States,  61 Fed. Cl. 223, 226 (2004).  Nevertheless, the Beta Analytics International, Inc. court, which addressed a request for discovery related to allegations of an "organizational conflict of interest," required more than mere argument that an agency's evaluation of a bid was erroneous as grounds for permitting discovery.  Id.  To that end, the court stated that the party seeking to obtain discovery based upon allegations of bad faith must: (1) make a threshold showing of either a motivation for the government employee to have acted in bad faith or of conduct that is hard to explain absent bad faith; and (2) persuade the court that discovery could lead to evidence that would provide the level of proof sufficient to overcome the presumption of regularity and good faith.  Id.  Denying the plaintiff's discovery requests, the Beta Analytics International, Inc. court explained that "[i]nnuendo or suspicion is not enough to demonstrate bad faith and thus justify discovery."  Id. (citing Orion Int'l Tech. v. United States, 60 Fed. Cl. 338, 344 (2004)).

Here, DataMill does not seek deposition testimony from the contracting officer. However, regardless of which individuals are the subject of DataMill's motion for expedited discovery, DataMill has not demonstrated that the discovery it seeks is necessary.  Under the two-part standard set forth by the Beta Analytics International, Inc. court, DataMill has failed to make a threshold showing of either a motivation for a government employee to have acted in bad faith or conduct that is hard to explain absent bad faith.  See id.  DataMill has not alleged in its complaint that an "organizational conflict of interest" affected the procurement at issue in this case.  But cf. Pl.'s Mot. 3 (asserting that discovery is needed in order "to establish the depth of a Northrop Grumman organizational conflict of interest").  In fact, DataMill's discovery requests are based entirely upon innuendo and suspicion, particularly since Northrop Grumman is an adverse party in DataMill's trade secret litigation pending before the Northern District of Alabama.  DataMill argues that Mr. Lawler, previously identified as an employee of Northrop

Grumman, was a "key and pivotal person" who influenced the decision-making process to select the COLTS program, a contention that DataMill states is supported by the fact that Mr. Lawler's "name, emails and documents" appear in the agency-assembled administrative record. Id. It intimates that Mr. Lawler, together with Messrs. Frost and Porter, previously identified as two C-RAM Program Office employees, conspired to influence the decision to procure the COLTS system, see id. at 3 (arguing that "information used by Lawyer, Frost and Porter . . . convince[d] the Navy to issue the Task Order without competition was patently false and they knew it to be false"), but ultimately fails to elaborate as to how these individuals allegedly exerted their influence. Furthermore, DataMill fails to explain how electronic mail communications generated in 2006 by Mr. Lawler are in any way relevant to the procurement decision at issue in this case, particularly when the vast majority of documents constituting the agency-assembled administrative record were generated in 2008 or 2009.

DataMill has not indicated how Mr. Lawler's communications dating back to 2006 or his interactions with Messrs. Frost and Porter are relevant other than to baldly assert that "[a]ll three were critical to the decision made and provided substantial information." Id. Because DataMill has not made a threshold showing of either a motivation for Army personnel to have acted in bad faith or conduct that is hard to explain absent bad faith, its discovery request cannot be sustained. Moreover, the mere allegation of the existence of an organizational conflict of interest has not been sufficient to warrant discovery in procurement cases. See Beta Analytics Int'l, Inc., 61 Fed. Cl. at 226.

DataMill's reliance upon Global Computer Enterprises, Inc., wherein the court permitted supplementation of the administrative record, is misplaced. In that case, the plaintiff alleged that the agency-assembled administrative record failed to provide the court with the perspective of potential bidders at the time of the original procurement. 88 Fed. Cl. at 56. Specifically, the plaintiff alleged that audit-supporting federal financial management system services–those at issue in the case–differed substantially from mission and administrative support information technology services. Id. The plaintiff alleged that the original task order contained only the latter services and that the addition of the former services to the task order via modification without competition was unlawful. Id.; see also id. at 57 (explaining that the two types of services were bid and worked on by different groups of contractors). In support of its position, the plaintiff argued that a niche industry existed for the performance of audit-supporting federal financial management systems work and that supplementation of the administrative record to demonstrate the existence of a niche market would permit the court to ascertain the perspective of potential bidders when the original task order was being procured and to determine the scope of the original task order. Id. at 56-58.

Over objections from both the government and the defendant-intervenor, see id. at 58-60, the Global Computer Enterprises, Inc. court permitted supplementation. In so doing, the court recognized the unique circumstances presented in the case, countenancing a "flexible approach," id. at 62 & n.12, while acknowledging that supplementation must remain limited. Ultimately, it concluded that the complexity of the case, the "multitude of issues presented with respect to both

jurisdiction and the merits," the voluminous amount of information presented by the parties, and the necessity for supplementation in order to not frustrate effective judicial review all weighed in favor of supplementation.  Id. at 63.

None of the factors that the Global Computer Enterprises, Inc. court weighed in granting the plaintiff's motion to supplement the administrative record is present in the case sub judice, and DataMill does not argue otherwise.  Instead, DataMill merely acknowledges that the Global Computer Enterprises, Inc. court considered numerous factors in determining that supplementation of the administrative record was appropriate.  In so doing, DataMill does not address why any of these factors are relevant here.  For example, DataMill asserts that supplementation is required for meaningful judicial review, see Pl.'s Mot. 4, but it fails to elaborate why meaningful judicial review cannot be achieved utilizing the current agency-assembled administrative record.  Cf. Pl.'s Reply 3 ("The administrative record produced by the Government does not contain all the facts . . . .").  DataMill, like the appellant in Information Technology & Applications Corp., has not pointed to any specific record evidence that might support its argument.  See 316 F.3d at 1323 n.2.  Instead, it claims, without elaboration, that the history of Northrop Grumman's relationship with DataMill and the military is somehow relevant.[4]  Rather than setting forth specific grounds that it believes warrant the discovery it seeks, DataMill asserts that "[t]his Court, having recently issued a decision concerning the necessity of supplementation, is fully aware of all of the considerations."[5]  Pl.'s Mot. 4.  Yet, the considerations that justified supplementation of the administrative record in one case do not necessarily apply in another case.

Although it is aware of the circumstances that warranted a flexible approach to supplementation of the administrative record in Global Computer Enterprises, Inc., the court declines DataMill's invitation to interpret Global Computer Enterprises, Inc. as authorizing a flexible approach to supplementation in all bid protest contexts.  DataMill bears the burden of explaining why the agency-assembled administrative record is insufficient.  Absent concrete and specific reasons–rather than nebulous assertions–as to why the discovery sought in this case is necessary, the mere fact that the court permitted supplementation of the administrative record in Global Computer Enterprises, Inc., standing alone, does not justify supplementation in this case.  Accordingly, DataMill's motion for expedited discovery is denied.

_____

[4]  Bid protest jurisdiction in the Court of Federal Claims extends to actions by interested parties objecting to "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  The court "reviews the challenged agency action," Madison Servs., Inc. v. United States, No. 09-675C, 2009 WL 5251950, at *2 (Fed. Cl. Dec. 23, 2009) (emphasis added), not the underlying relationships among those companies that compete in the marketplace.

[5]  The undersigned presided over the proceedings in Global Computer Enterprises, Inc.

### III. DEFENDANT'S MOTION TO STRIKE

The court next addresses DataMill's incorporation of a declaration from its president, Tre' Book, as part of its response to defendant's motion to dismiss.  Defendant notes that DataMill never moved to supplement the administrative record with the Book Declaration.  Def.'s Mot. Strike Decl. Tre' Book ("Def.'s Mot.") 1 n.1.  Accordingly, defendant objects to the inclusion of the Book Declaration on the basis that DataMill has not complied with procedural requirements.  Id.; see also Software Eng'g Servs., Corp. v. United States, 85 Fed. Cl. 547, 549 (2009) (permitting the supplementation of the administrative record with an affidavit upon motion); Ingham v. United States, No. 07-124C, 2007 WL 5172422, at *1, 4 (Fed. Cl. Nov. 26, 2007) (unpublished decision) (construing the plaintiff's motion for leave to consider an affidavit as a motion to supplement the administrative record, which the court ultimately granted); Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 746 (2006) (denying a motion to supplement the administrative record wherein the plaintiff sought the inclusion of an affidavit); Info. Tech. & Applications Corp. v. United States, 51 Fed. Cl. 340, 355 n.26 (2001) (incorporating the plaintiff's affidavit after granting a motion to supplement the administrative record).  Defendant requests that the court "strike the Book Declaration in its entirety as well as those portions of Plaintiff's Response that cite to or rely upon statements made in the Book Declaration."  Def.'s Mot. 6.  Although DataMill should have filed a motion to supplement the administrative record with the Book Declaration, see id. at 1-4 (asserting that the declaration should be stricken, in part, because it is not part of the administrative record), the court concludes that this procedural error is ultimately harmless.[6]

Defendant also argues that the Book Declaration "was not submitted at the agency level prior to the issuance of the MIPR or the delivery order and is not connected in any way with the agency's procurement decision."  Id. at 2; see also id. at 4 ("The Book Declaration is made by DataMill's president, who had no involvement in the Army's procurement decision and therefore does not and cannot explain the Army's decision-making process.").  The agency-assembled administrative record, defendant contends, is sufficient and does not require supplementation with the Book Declaration, and defendant also asserts that "if the Court were to determine that there are gaps in the record that preclude effective judicial review, the proper course would be to supplement the record with affidavits from agency personnel explaining their decision."  Id. at 3.

Regarding the substance of the Book Declaration, defendant first notes that its declarations of Mr. Frost and Kevin Nguyen, the Contracting Officer Representative for the Navy's SPAWAR Systems Center Pacific, together with its motion to dismiss, "contain information relating solely to [the] propriety of injunctive relief[] and do not relate to the procurement through delivery order that is the subject of DataMill's protest, and therefore are not

---

[6]  In fact, DataMill filed an unopposed motion to file the Book Declaration out of time after it discovered that the declaration was inadvertently omitted from its response brief.  The court granted the motion and considered the declaration as if it had been filed simultaneously with DataMill's response.  See Order, Jan. 22, 2010.

intended to be part of the administrative record." <u>Id.</u> at 1 n.1.  By contrast, defendant asserts, the Book Declaration "is directed entirely and principally to the agency action that DataMill challenges."  <u>Id.</u>  Defendant maintains that the Book Declaration "contains numerous argumentative statements, opinion, and statements not based upon personal knowledge," <u>id.</u> at 1, specifically identifying seven paragraphs that it believes contain argument and not factual assertions, <u>id.</u> at 5 (citing Decl. Tre' Book ("Book Decl.") ¶¶ 10, 17, 20, 26-27, 30-31), six paragraphs that it believes contain opinion, <u>id.</u> (citing Book Decl. ¶¶ 16-19, 21, 25); <u>see also</u> Def.'s Reply Supp. Def.'s Mot. ("Def.'s Reply") 2 (arguing that these statements "were opinion, not fact" because [. . .]), and four paragraphs that it believes contain speculation, Def.'s Mot. 5 (citing Book Decl. ¶¶ 17, 27, 29, 32).  According to defendant, "[m]uch of the putatively factual material in the Book Declaration is obviously beyond Mr. Book's personal knowledge."  <u>Id.</u> (citing Book Decl. ¶¶ 5, 11, 17-18, 25, 27, 29, 32); <u>see also</u> Def.'s Reply 2-3 (construing these statements as "factual assertions[] that[,] by their nature[,] are beyond Mr. Book's personal knowledge").  Consequently, defendant argues that these statements would be inadmissible (1) "pursuant to RCFC 56(c) [sic], if non-factual," Def.'s Mot. 6; <u>see</u> RCFC 56(e)(1) (providing that an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated"), (2) pursuant to Federal Rule of Evidence 602 if beyond personal knowledge, Def.'s Mot. 6; <u>see</u> Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."), and (3) pursuant to Federal Rule of Evidence 701 if opinion, Def.'s Mot. 6; <u>see</u> Fed. R. Evid. 701 (providing that lay witness testimony "in the form of opinions or inferences is limited to those opinions or inferences which are . . . rationally based on the perception of the witness").  Furthermore, defendant argues that the Book Declaration is inaccurate, [. . .].[7]  Def.'s Mot. 5 (citing Book Decl. ¶ 16).

DataMill asserts that Mr. Book's testimony is admissible because Mr. Book "knows personally [. . .]."  Pl.'s Opp'n 1.  DataMill also maintains that Mr. Book may proffer lay opinion testimony because he "has had very substantial experience with selling to the United States Government, developing complex computer software to address the needs of a contractor computer software logistics support system, and he has had wide experience in his relationship with the C-RAM Project Office and the way it operates."  <u>Id.</u> at 2; <u>see also</u> <u>id.</u> at 3 ("Tre' Book has the background, specialized experience[,] and personal knowledge to testify to facts arising out of his personal knowledge and observations and opinions based upon his specialized knowledge and experience in order to help the Trier of Fact resolve this matter.").  In support of its position that the Book Declaration is admissible in its entirety pursuant to Federal Rule of Evidence 701, DataMill cites <u>Global Computer Enterprises, Inc.</u>, wherein the court supplemented the administrative record with lay opinion testimony.  <u>Id.</u> at 2 (citing 88 Fed. Cl. at 66).

---

[7]  In response, DataMill concedes that a quotation was erroneously attributed, but it nevertheless asserts that the essence of Mr. Book's statement is accurate.  Pl.'s Reply Opp'n Def.'s Mot. ("Pl.'s Opp'n") 2-3.

## A.  Personal Knowledge and Federal Rule of Evidence 602

Witnesses are required to testify to matters of which they have personal knowledge:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.  This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.[8]

Fed. R. Evid. 602 (footnote added).  Federal Rule of Evidence 602, which "is an extension of the law's usual preference that decisions be based on the best evidence available," 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 602.02[1] (2d ed. 2009), "restates common sense: Obviously a witness should not be allowed to testify on matters with which he has no familiarity, for such testimony would be of no use to the trier of fact and would waste everybody's time," 3 C.B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 6:5 (3d ed. 2007); see also 1 McCormick on Evidence § 10 (Kenneth S. Broun et al. eds., 2006) ("One of the earliest and most pervasive manifestations of the common law insistence [upon the most reliable sources of information] is the rule requiring that a witness testifying about a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact.").

"Testimony of ordinary lay witnesses should not be admitted without some evidence to demonstrate that the witnesses have personal knowledge of the subject matter of the testimony." 2 Steven A. Saltzburg et al., Federal Rules of Evidence Manual § 602.02[1] (9th ed. 2006). Federal Rule of Evidence 701, which permits lay witnesses to testify in opinion form, see infra Part III.B, "does not undercut the requirement of personal knowledge; in fact, Rule 701 effectively incorporates the personal knowledge requirement as a prerequisite to acceptance of opinions by lay persons."[9]  Saltzburg et al., supra, at § 602.02[2].  The party offering the testimony bears the burden of laying a foundation showing that the witness "had an adequate opportunity to observe and presently recalls the observation," and a "person who has no knowledge of a fact except what another has told him does not satisfy the requirement of knowledge from observation," 1 McCormick on Evidence, supra, at § 10.

---

[8]  Because DataMill represents that Mr. Book proffers lay–and not expert–opinion, see Pl.'s Opp'n 1-2 (contending that Mr. Book, pursuant to Federal Rule of Evidence 701, may proffer lay opinion), Rule 703 does not apply in this case.

[9]  Federal Rule of Evidence 602 is also subject to the hearsay rule.  Weinstein & Berger, supra, at § 602.02[3].  Hearsay, which "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Fed. R. Evid. 801(c), is not admissible unless an exception applies, Fed. R. Evid. 802; see also Fed. R. Evid. 803-804 (enumerating hearsay exceptions).

Because the "threshold for admitting testimony under Rule 602 is 'low,'" <u>United States v. Franklin</u>, 415 F.3d 537, 549 (6th Cir. 2005) (quoting <u>United States v. Hickey</u>, 917 F.2d 901, 904 (6th Cir. 1990)), evidence is inadmissible under Federal Rule of Evidence 602 "only if [the trial court] . . . finds that the witness could not have actually perceived or observed that which he testifies to," <u>M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.</u>, 681 F.2d 930, 932 (4th Cir. 1982).  Federal Rule of Evidence 602 requires that the trier of fact

> base its decision on good and trustworthy evidence, and 'personal knowledge' really means firsthand knowledge–that which comes to the witness through his own senses, mostly sight and hearing.  Thus a witness may testify to an event or occurrence that he has seen himself, but not one that he knows only from the description of others.

3 Mueller & Kirkpatrick, <u>supra</u>, at § 6:5.  Accordingly, "[a]ctual knowledge of a fact by an affiant is sufficient for a finding in favor of personal knowledge."  <u>Shell Petroleum, Inc. v. United States</u>, No. 97-945T, 2001 WL 36142722, at *4 (Fed. Cl. Apr. 12, 2001) (unpublished decision).

## B.  Opinion Testimony and Federal Rule of Evidence 701

Federal Rule of Evidence 701 governs opinion testimony by lay witnesses:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[10]

Fed. R. Evid. 701 (footnote added).  In 2000, Federal Rule of Evidence 701 was amended to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through

---

[10]  Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note. Although "the difficulty in administering the 2000 amendment [is] drawing the line between lay and expert testimony," 1 McCormick on Evidence, supra, at § 11, the advisory committee nonetheless distinguished between the two as follows: lay testimony "'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field,'"[11] Fed. R. Evid. 701 advisory committee's note (quoting State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992)).

"Implicit in [Federal Rule of Evidence 701] is a distinction between fact and opinion, and the premise is that generally lay witnesses should testify to facts." 3 Mueller & Kirkpatrick, supra, at § 7:1. There is, however, "no satisfactory dividing line between these two categories." Id. Witnesses should state facts, i.e., "they should provide particulars or details, so the trier of fact may put them together . . . ." Id.; see also 1 McCormick on Evidence, supra, at § 10 ("[T]he law prefers that a witness testify to facts, based on personal knowledge, rather than opinions inferred from such facts."); 4 Weinstein & Berger, supra, at § 701.03[1] ("To be admissible, lay opinion testimony must be based on the witness's personal perception."). Where Federal Rule of Evidence 701 allows opinions or inferences, "what is meant is that the witness may be more general, conclusory, and evaluative." 3 Mueller & Kirkpatrick, supra, § 7:1; accord 4 Weinstein & Berger, supra, at § 701.03[1] ("Lay opinion testimony is . . . admissible when the inference is a conclusion drawn from a series of personal observations over time."). As the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") explained in United States v. Espino,

> Rule 701 permits lay opinion testimony if it is based on "relevant historical or narrative facts that the witness has perceived," and if it "would help the factfinder determine a matter in issue[.]" "While the ordinary rule confines the testimony of a lay witness to concrete facts within his knowledge or observation, the [c]ourt may rightly exercise a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience."

317 F.3d 788, 797 (8th Cir. 2003) (citations omitted); see also 1 McCormick on Evidence, supra, at § 11 ("[B]y its terms Rule 701 authorizes the receipt of any lay opinion 'helpful' to the trier of fact."). Thus, "the situations that invite opinions or inferences . . . are themselves stated

---

[11] The amendments to Federal Rule of Evidence 701 were

> intended to induce the courts to focus on the reasoning process by which witnesses reached their opinions; the courts are to determine whether the proffered testimony should be analyzed under Rule 701 or Rule 702 by ascertaining whether the witness used a reasoning process normal to the activities of everyday life.

4 Weinstein & Berger, supra, at § 701.03[1].

16

generally, with a looseness about them that calls for the exercise of discretion by the trial judge." 3 Mueller & Kirkpatrick, supra, at § 7:1; accord United States v. Kaplan, 490 F.3d 110, 117 (2d Cir. 2007) (reviewing a district court's decision to admit lay opinion testimony for abuse of discretion); Union Pac. Res. Co. v. Chesapeake Energy Corp., 236 F.3d 684, 692-94 (Fed. Cir. 2001) (applying the law of the United States Court of Appeals for the Fifth Circuit with respect to nonpatent issues to review evidentiary rulings under an abuse of discretion standard and finding that the district court did not abuse its discretion by admitting opinion testimony under Federal Rule of Evidence 701); Burlington N. R.R. Co. v. Nebraska, 802 F.2d 994, 1005 (8th Cir. 1986) ("The district court has broad discretion in determining whether to admit opinion testimony and we overturn a ruling only for abuse of discretion.").

"The general application of Rule 701 indicates that a lay witness may testify about facts within his or her range of generalized knowledge, experience, and perception." Espino, 317 F.3d at 797. The opinion "must have a rational connection to those facts." Miss. Chem. Corp. v. Dresser-Rand Co., 287 F.3d 359, 373 (5th Cir. 2002); accord Union Pac. Res. Co., 236 F.3d at 693 (sustaining the district court's decision to admit testimony from eight witnesses with "extensive personal experience" in the oil drilling industry); Burlington N. R.R. Co., 802 F.2d at 1005 ("A lay witness' testimony in the form of opinions or inferences need only be rationally based on perception . . . ."). Where the testimony is based upon personal knowledge of the facts underlying the opinion and the opinion is rationally related to the facts, a lay witness may, "under certain circumstances[,] express an opinion even on matters appropriate for expert testimony." Soden v. Freightliner Corp., 714 F.2d 498, 511 (5th Cir. 1983) (citing cases from the Eighth Circuit and the United States Courts of Appeals for the Tenth Circuit).

### C.  Analysis of the Book Declaration

As discussed in Part III.E, infra, DataMill cites the Book Declaration extensively in its response brief, to which the declaration was appended. The declaration is devoted primarily to describing, interpreting, and challenging the accuracy of statements made in various documents contained in the agency-assembled administrative record, arguing the merits of the Army's procurement decision, [. . .]. Additionally, no portion of the Book Declaration addresses the public interest inquiry, which is related to an award of injunctive relief in this case.

### 1.  Sections That Are Irrelevant

Numerous sections of the Book Declaration contain information that is not relevant to DataMill's protest.[12] The administrative record need not be supplemented with statements

---

[12] The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is generally admissible, whereas evidence that is not relevant is not admissible. Fed. R. Evid. 402.

related to [. . .] have no bearing on the Army's decision to conduct a noncompetitive sole-source procurement in this case. The same principle governs Mr. Book's own assessment of [. . .]. All of these statements are not relevant because they have no tendency to make the existence of any fact that is of consequence to the determination of this case, including whether the Army violated the CICA by obtaining the COLTS program through a noncompetitive delivery order procurement, more or less probable in their absence. See Fed. R. Evid. 401. The court's ability to engage in effective judicial review is not hindered by the absence of these statements. See Axiom Res. Mgmt., Inc., 564 F.3d at 1380 ("[S]upplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" (quoting Murakami, 46 Fed. Cl. at 735)).

### 2. Sections That Address the Merits of the Army's Procurement Decision

The Book Declaration also contains numerous statements that relate to the merits of this case, describe the contents of various documents already in the administrative record, or challenge the accuracy of the statements contained in various documents. See, e.g., Book Decl. ¶¶ 3 [. . .]. The best evidence of the contents of the documents that constitute the agency-assembled administrative record are the documents themselves, not Mr. Book's interpretations thereof.[13] As the PlanetSpace Inc. court explained, "attempt[s] to argue the correctness, rather than the reasonableness, of [the agency's] award decision [are] beyond the scope of this court's limited APA-type review," 90 Fed. Cl. at 8, and the court determines that a failure to incorporate these statements in the record in this case does not hinder its ability to effectively review the Army's decision to conduct a noncompetitive sole-source procurement, see Axiom Res. Mgmt., Inc., 564 F.3d at 1379-80.

### 3. Sections That Relate to DataMill's Relationship With Northrop Grumman

Several sections of the Book Declaration address matters related to DataMill's relationship with Northrop Grumman. These include statements that: [. . .]. These statements, like those addressed in Part III.C.1, supra, are not relevant to the Army's procurement decision at issue in this case. They also do not constitute proper lay opinion testimony that is admissible under Federal Rule of Evidence 701 because they are not rationally based upon Mr. Book's perception and do not aid in determining a fact in issue.[14] More importantly, these statements

---

[13] Federal Rule of Evidence 1002 provides: "To prove the content of a writing . . . , the original writing . . . is required, except as otherwise provided in these rules or by Act of Congress." "It is well settled, under the best evidence rule, that in proving the contents of a document, the document itself must be produced . . . ." Bendix Corp. v. United States, 600 F.2d 1364, 1371-72 (Ct. Cl. 1979).

[14] By contrast, the Global Computer Enterprises, Inc. court permitted supplementation of the administrative record with lay opinion testimony that was "based upon extensive experience in the industry" or based upon "the witness's experience and specialized knowledge obtained in

implicate DataMill's intellectual property rights and other matters that are not properly before this court.  In light of DataMill's pending litigation before the Northern District of Alabama, these portions of the Book Declaration are more appropriately addressed to that forum.  Effective judicial review in this case is not constrained by a failure to include these statements in the record before the court.  See Axiom Res. Mgm't, Inc., 564 F.3d at 1379-80.

### 4. The Remaining Sections of Mr. Book's Declaration

The remaining sections of Mr. Book's declaration either provide background information that is publicly available or ascertainable in the agency-assembled administrative record or the parties' briefs, see Book Decl. [. . .].

### D. The Book Declaration Must Be Stricken

In adjudicating a motion to strike numerous declarations, the PlanetSpace Inc. court observed that, with respect to one declaration, the majority of statements contained therein were "clearly devoted to attacking the merits" of the agency's award decision and were therefore "prototypical of the kind of extra-record evidence against which the court must guard . . . ."  90 Fed. Cl. at 6.  The court struck the entire declaration, determining that the "declaration is devoted entirely to re-arguing the merits of NASA's award decision."  Id.  With respect to a second declaration, the PlanetSpace Inc. court struck those portions that were irrelevant and had "no bearing upon the public interest but [were related] primarily to arguing the merits of NASA's award decision . . . ."[15]  Id. at 7-9.  A similar result is warranted here.

As explained in Part III.C.1, supra, many statements contained in the Book Declaration are not relevant to the issue of whether the Army's decision to conduct a noncompetitive sole-source procurement for the COLTS program violated the CICA.  As such, these statements are inadmissible and must be stricken.  Moreover, the court strikes those statements related to DataMill's relationship with Northrop Grumman, see supra Part III.C.3, because they fall outside the scope of this case and are more appropriately addressed to the trade secret litigation pending before the Northern District of Alabama.  As explained in Part III.C.2, supra, numerous

---

his vocation of avocation."  88 Fed. Cl. at 67 (discussing Union Pacific Resources Co. and L.A. Times Communications, LLC v. Department of the Army, 442 F. Supp. 2d 880 (C.D. Cal. 2006)).  Although DataMill relies upon Global Computer Enterprises, Inc., it has not demonstrated how the Book Declaration satisfies the standard for admissibility discussed in that case.  Rather, it merely asserts that "Book's testimony . . . is based on his experience and specialized knowledged obtained in his vocation or avocation."  Pl.'s Opp'n 2.

[15]  The court did not strike those paragraphs that were relevant to the public interest inquiry for injunctive relief, reasoning that they were "properly admissible, not as a supplement to the administrative record, but as evidence relevant to the prospective relief being sought in this court."  PlanetSpace Inc., 90 Fed. Cl. at 7.

statements contained in the Book Declaration re-argue the merits of the Army's decision.  The inclusion of such extra-record evidence is inappropriate in a bid protest case, and these statements must be stricken.  Finally, those statements that are not based upon Mr. Book's personal knowledge or contain hearsay are not admissible.  See, e.g., Vesom v. Atchison Hosp. Ass'n, 279 Fed. App'x 624, 632-34 (10th Cir. 2008) (affirming the district court's determination to strike two affidavits because they were not based upon personal knowledge, contained inadmissible hearsay, or consisted of conclusory statements); Amie v. El Paso Indep. Sch. Dist., 253 Fed. App'x 447, 452 (5th Cir. 2007) (determining that the district court did not abuse its discretion by striking an individual's affidavit that contained "no factual support for her personal knowledge"); cf. Ryco Constr., Inc. v. United States, 55 Fed. Cl. 184, 196 (2002) (striking portions of a declaration that contained legal conclusions but declining to strike portions pertaining to factual issues where the declarant had participated in discussions and made statements based upon personal knowledge).

Although DataMill invokes Global Computer Enterprises, Inc. as support for inclusion of the Book Declaration in this case, its reliance is misplaced.  As an initial matter, the Global Computer Enterprises, Inc. court explained that it "permitted the parties to file additional declarations 'relating to the risks of harm to the parties.'"  88 Fed. Cl. at 56 n.4 (emphasis added); see also id. (noting that, while the defendant-intervenor objected to supplemental declarations, it did not object, in principle, to the submission of harm declarations); id. at 68 n.22 (considering a proffered declaration "only with regard to potential harms" and admitting an additional declaration because "the administrative record does not aid the court in determining the full scope of potential harms to the parties").  DataMill neither addresses the Global Computer Enterprises, Inc. court's limited consideration of the declarations it admitted into evidence nor proffers the Book Declaration for the purpose of explaining the alleged harms to which DataMill has or will continue to be subjected.  The Global Computer Enterprises, Inc. court also determined that the lay opinion testimony contained in numerous proffered declarations was admissible because the opinions were "based upon circumstances [the declarants] have observed or encountered within the industry and reflect a general knowledge of their work."  Id. at 67; see also id. at 68 (noting that the admitted lay opinion testimony did not require any particular expertise or specialization in government contracting but instead was "based entirely upon personal experience and observations obtained through the declarants' line of work").  Other than explaining that he personally developed RepairData and that RepairData currently supports various military systems, see Book Decl. ¶¶ 1, 4, Mr. Book does not discuss meaningfully his expertise, skill, or personal experience and observations obtained through his line of work such that any proffered lay opinion testimony is akin to the testimony the court encountered in Global Computer Enterprises, Inc.  As mentioned in note 14, supra, DataMill merely asserts–without explanation–that Mr. Book's testimony is based upon his experience and specialized knowledge.

For the foregoing reasons, the statements contained in the Book Declaration are inadmissible.  Accordingly, the court strikes Mr. Book's declaration in its entirety.

**E.  The Portions of DataMill's Response Brief That Rely Exclusively Upon Mr. Book's Declaration Must Be Stricken**

DataMill relies heavily upon the Book Declaration in its response to defendant's motion to dismiss.  Of the fourteen numbered paragraphs in DataMill's statement of facts section, twelve contain citations to the Book Declaration.  See Pl.'s Resp. Def.'s Mot. Dismiss Lack Jurisdiction Or Alternative, Mot. J. Administrative R. & Supp. Pet. Inj. ("Pl.'s Resp. Def.'s Mot. Dismiss") 3-7; cf. PlanetSpace Inc., 90 Fed. Cl. at 6 (observing that the plaintiff relied upon a declaration in its motion for judgment on the administrative record, "including, curiously, sixteen citations in its statement of facts").  By contrast, DataMill provides direct citation to the administrative record only three times in this section.  See Pl.'s Resp. Def.'s Mot. Dismiss 3 ¶¶ 1-2, 6 ¶ 14.

Furthermore, DataMill's substantive arguments rely almost exclusively upon the allegations contained in its complaint and Mr. Book's declaration.  See, e.g., id. at 8 (citing Compl. ¶¶ 5, 9-10, 12; Book Decl. ¶¶ 15-19), 9 (citing Book Decl. ¶¶ 30-33), 10 (citing Book Decl. ¶¶ 16, 24-25), 11 (citing Book Decl. ¶¶ 9-13), 13 (citing Compl. ¶ 15).  But see id. at 10 (citing two pages from the administrative record).  By relying upon the Book Declaration instead of the administrative record in crafting its arguments, DataMill essentially utilizes the declaration to attack the merits of the Army's decision.[16]  See, e.g., Pl.'s Resp. Def.'s Mot. Dismiss 9 (citing the Book Declaration in support of DataMill's position that [. . .]).  In light of the court's determination to strike the Book Declaration from the record in this case, those portions of DataMill's response brief that reference, discuss, or rely upon the Book Declaration must similarly be stricken.

**IV.  CONCLUSION**

Supplementation of the administrative record, while warranted in some circumstances, is not necessary in this case because the absence of the information DataMill seeks to incorporate into the administrative record of this case does not frustrate effective judicial review.  Additionally, the Book Declaration, for the reasons discussed above, contains statements that are not relevant to the issues before the court and are therefore not admissible.  Accordingly, plaintiff's motion for expedited discovery is **DENIED** and defendant's motion to strike the Book Declaration is **GRANTED**.

The court has filed this decision under seal.  The parties shall confer to determine proposed redactions that are mutually agreeable.  Then, by no later than **Friday, March 19, 2010**, the parties shall file under seal a joint status report indicating their agreement with the

---

[16]  Indeed, DataMill relies upon the administrative record only twice in its substantive argument.  See, e.g., Pl.'s Resp. Def.'s Mot. Dismiss 10 (discussing documents containing Mr. Lawler's recommendations and an electronic communication between Mr. Porter and a Navy employee regarding funding for the COLTS program).

proposed redactions and attaching a complete copy of the court's opinion with all redactions clearly indicated.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge